# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| ANNE O'BOYLE, Individually and on Behalf of All Others Similarly Situated, | Case No.: 18-cv-1921 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **Jury Trial Demanded** |
| NORTH SHORE AGENCY, LLC, | |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Anne O'Boyle is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect a debt from her allegedly incurred for personal, family, or household purposes.

5. Defendant North Shore Agency, LLC ("NSA") is a foreign corporation with its principal place of business located at 270 Spagnoli Road, Suite #110, Melville, NY 11747.

6. NSA is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. NSA is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. NSA is a debt collector as defined in 15 U.S.C. § 1692a.

**FACTS**

9. On or about October 30, 2018, NSA mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "PUBLISHERS CLEARING HOUSE." A copy of this letter is attached to this complaint as Exhibit A.

10. Upon information and belief, the alleged debt referenced in Exhibit A was incurred as the result of the purchase of goods and services on credit, which were used only for personal, family, or household purposes.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form, initial communication, debt collection letter used by NSA to attempt to collect alleged debts.

13. Upon information and belief, Exhibit A was the first letter that NSA sent to Plaintiff regarding the alleged debt referenced therein.

14. The reverse side of Exhibit A contains the FDCPA validation notice (*see* 15 U.S.C. § 1692g(a)):

> Unless you notify this office within 30 days after receipt of this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receipt of this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receipt of this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

15. <u>Exhibit A</u> also states:

> You may correspond with our office by mail, email or fax:
> **Mail** - P.O. Box 9221, Old Bethpage, NY 11804; **Email** - customercare@northshoreagency.biz; **Fax** - 631-574-4660. Please include a copy of North Shore Agency letter or coupon, or your complete account information, with all communications.

16. The text in NSA's letter to Plaintiff and the class is inconsistent with 15 U.S.C. § 1692g(a), which states:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

17. NSA's language imposes additional requirements on debtors wishing to dispute a debt.

18. NSA also misleads debtors as to what they actually need to do to dispute a debt.

19. NSA's actions have the practical effect of discouraging individuals from exercising their dispute rights.

20. <u>Exhibit A</u> directs the consumer to "include a copy of North Shore Agency letter or coupon, or your complete account information, with all communications." However, nothing in 15 U.S.C. § 1692g(a) requires that a copy of the letter or coupon, or the consumer's complete account information be included in a written dispute.

21. Failure to provide the correct validation notice, or overshadowing it with confusing, contradictory, or apparently contradictory language, is a *per se* violation of the FDCPA. No analysis of materiality of the error or omission is required. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

22. For the purposes of Plaintiff's claims under 15 U.S.C. § 1692e, false statements to the effect that the consumer must "jump through hoops" that are not specified in the FDCPA in order to communicate disputes, are materially false statements.

23. In general, false, misleading or confusing statements about the debt itself, or about the creditor's, debtor's or debt collector's rights or intentions, are all material. *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009).

24. NSA's language imparts in the unsophisticated consumer a false belief about the requirements to dispute a debt. *See Mikolajczyk v. Universal Fid., LP*, 2017 U.S. Dist. LEXIS 24587, at *11 (E.D. Wis. Feb. 22, 2017) (misrepresentation that consumer should provide a reason for dispute was material because it "may dissuade her from exercising her unfettered right under the FDCPA to dispute the debt.").

25. The unsophisticated consumer would be confused by the language in NSA's letter. The unsophisticated consumer would interpret the requests for copies of the letter or account information as requirements. *See, e.g. Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362,

4

Case 2:18-cv-01921-PP   Filed 12/06/18   Page 4 of 13   Document 1

367, n.1 (7th Cir. 2018); *quoting Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012) ("[C]onditional language, particularly in the absence of any language clarifying or explaining the conditions, does not insulate a debt collector from liability.").

26. The consumer would be misled into believing that a written dispute sent without the "North Shore Agency letter or coupon, or your complete account information" would be disregarded or otherwise not treated as a dispute, even though NSA would actually have to treat such a communication as a dispute. The unsophisticated consumer, however, does not know this.

27. NSA's additional requirements are unnecessary. Upon information and belief, NSA could easily match Plaintiff's name to her account, even if she did not include any of the additional information NSA requests. The unsophisticated consumer does not know this either.

28. Upon information and belief, the sole purpose of NSA's language requesting a copy of the letter or "complete account information" be sent with "all communications" is to waste the consumer's time or make the consumer believe that the dispute process is burdensome, thereby reducing disputes. *See, eg.*, *Walters v. PDI Management Services*, 02-CV-1100-JDT-TAB, 2004 WL 1622217 at *18-20 (S.D. Ind., April 6, 2004), *modified by Walters v. PDI Management Services*, 2004 WL 2137513 (S.D. Ind., Jun 14, 2004) (certified mail "requirement" violated 15 U.S.C. § 1692g(a) because, in part and independent of the additional cost, it wastes the consumer's time taking the letter to the post office).

29. The unsophisticated consumer cannot be expected to own a photocopier, scanner or fax machine, or have free access to one. In order to create a copy of NSA's letter, the consumer would have to pay for a copy to be made at a commercial location.

30. Debt collectors have an incentive to avoid processing dispute letters. While the debt collection process is primarily automated, disputes must be processed by hand, and

5

sometimes by an attorney's hand. Written disputes both cause debt collectors to incur costs of time and money to validate debts and put the collector at risk of FDCPA liability for the subsequent communications related to validation. *See, e.g.*, *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785-86 (6th Cir. 2014) (debt collector's response to consumer's verification request was insufficient and violated 15 U.S.C. §§ 1692e and 1692g). Debt collectors may likewise be concerned that creditors, who must also respond to requests for validation, would be hesitant to use debt collectors whose letters prompt disputes, "wasting" creditors' time by requiring responses.

31. Thus, the purpose and effect of NSA's additional requirement language is to discourage consumers from disputing debts by making the consumer believe, falsely, that additional, unnecessary steps are necessary to submit disputes.

32. Furthermore, Exhibit A includes the following representation:

| Order Number | Product Description | Order Amount Due |
|---|---|---|
| 2409 | SOUTHERN LIVING | $5.53 |
|  | COUNTRY GARDENS |  |
|  |  | TOTAL DUE $5.53 |

33. On its face, Exhibit A appears to itemize Plaintiffs alleged debt as being associated with a transaction(s) associated with two different "Product Description[s]": (1) "SOUTHERN LIVING" and (2) "COUNTRY GARDENS."

34. While the line listing the "Product Description" of "SOUTHERN LIVING" also lists a corresponding "Order Number" and "Order Amount Due," the line listing the "Product Description" of "COUNTRY GARDENS" lists no such corresponding information.

35. Confronted with the confusing itemization provided by Exhibit A, the unsophisticated consumer would be left wondering whether the "TOTAL DUE" listed by the letter actually accounted for the entirety of the alleged debt sought by NSA and/or the creditor or

6

if there may be some additional, unknown amount associated with the "COUNTRY GARDENS" product description.

36. Exhibit A thus fails to disclose the amount of the debt the letter seeks to collect in a non-confusing manner.

37. As stated above, Under 15 U.S.C. 1692g(a)(1), a debt collector must, within five days of the initial communication to a consumer regarding an alleged debt, "state the amount of the debt."

38. It is not enough that a debt collector merely state the amount of the debt, it must do so in a non-confusing manner. *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004).

39. Plaintiff was confused and misled by Exhibit A.

40. The unsophisticated consumer would be confused and misled by Exhibit A.

41. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

### *The FDCPA*

42. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the

7

debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist.

8

LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

43. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

44. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

45. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

46. 15 U.S.C. § 1692g states, in part:

>    (a) **Notice of debt; contents**

9

Case 2:18-cv-01921-PP   Filed 12/06/18   Page 9 of 13   Document 1

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

. . .

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed Debts

. . .

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

## COUNT I – FDCPA

47. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

48. By requiring the consumer "include a copy of North Shore Agency letter or coupon, or your complete account information, with all communications," Exhibit A is false, deceptive, and misleading as to whether such additional information must be included along with

10

any written dispute or request for varication in order to trigger the consumer's rights under the FDCPA.

49. By requiring the consumer "include a copy of North Shore Agency letter or coupon, or your complete account information, with all communications," Exhibit A contradicts and overshadows the validation notice.

50. By adding additional requests that the unsophisticated consumer would interpret as requirements, NSA is attempting to discourage consumers from disputing debts in writing.

51. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692g(a)(3), 1692g(a)(4), 1692g(a)(5), and 1692g(b).

## COUNT II – FDCPA

52. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

53. By itemizing multiple "Product Descriptions," some of which were associated with an "Order Number" and "Order Amount Due" and some of which did not, Exhibit A is misleading as to whether the "TOTAL DUE" accounts for the entire amount NSA and/or the creditor was seeking to collect from Plaintiff.

54. By itemizing multiple "Product Descriptions," some of which were associated with an "Order Number" and "Order Amount Due" and some of which did not, Exhibit A fails to disclose the amount of Plaintiff's alleged debt in a non-confusing manner..

55. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692g(a)(3).

## CLASS ALLEGATIONS

56. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by

Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between December 6, 2017 and December 6, 2018, inclusive, (e) that was not returned by the postal service.

57. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

58. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

59. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

60. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

61. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

62. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated:  December 6, 2018

                              **ADEMI & O'REILLY, LLP**

            By:    /s/ Mark A. Eldridge
                    John D. Blythin (SBN 1046105)
                    Mark A. Eldridge (SBN 1089944)
                    Jesse Fruchter (SBN 1097673)
                    Ben J. Slatky (SBN 1106892)
                    3620 East Layton Avenue
                    Cudahy, WI 53110
                    (414) 482-8000
                    (414) 482-8001 (fax)
                    jblythin@ademilaw.com
                    meldridge@ademilaw.com
                    jfruchter@ademilaw.com
                    bslatky@ademilaw.com